IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BETH MAUK<br>492 Eleanor Lane<br>Arnold, Maryland  21012 | * <br> * <br> * | |
| Plaintiff, | * | |
| v. | * | Civil No. 8: 15-cv-01034 |
| MARYLAND DEPARTMENT OF<br>NATURAL RESOURCES<br>580 Taylor Avenue<br>Annapolis, Maryland  21401 | * <br><br>* <br><br>* | **JURY TRIAL DEMANDED** |
| Serve:     Mark J. Belton, Secretary<br>              580 Taylor Avenue<br>              Annapolis, Maryland  21401 | * <br><br>* | |
| And | * | |
| MARK J. BELTON, SECRETARY<br>Maryland Department of Natural Resources<br>580 Taylor Avenue<br>Annapolis, Maryland  21401 | * <br>* <br><br>* | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT**

Plaintiff Beth Mauk ("Plaintiff" or "Ms. Mauk"), by and through her attorney, Tonya Baña, brings this action against Defendants the Maryland Department of Natural Resources ("DNR") and Secretary Mark J. Belton ("Secretary Belton") (collectively, "Defendants"), pursuant to Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e, *et seq.,* as amended ("Title VII"), and in support thereof states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to redress unlawful retaliation by her employer. More specifically, since Plaintiff filed internal and external complaints accusing her superiors of sex discrimination, Defendants have subjected Plaintiff to an ongoing campaign of retaliatory harassment, including but not limited to, encouraging colleagues to make frivolous and/or baseless allegations against her, repeatedly placing her under investigation and, ultimately, filing thirty-six (36) separate charges against her in order to damage her reputation and/or "push her out" of NRP, suspending her, and forcing her to incur the emotional and financial burden and expense of a trial board for engaging in conduct that would not and has not resulted in the filing of administrative charges against other officers. Through this action, Plaintiff seeks declaratory and injunctive relief to prevent further discriminatory and retaliatory conduct by Defendants, compensatory damages for pecuniary losses, including, but not limited to, the costs and expenses relating to the trial board, as well as emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, nominal damages, and punitive damages, pre-judgment and post-judgment interest, and attorney's fees, plus the costs and expenses relating to this suit and such other and further relief as the Court may deem proper.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331 because this action is brought pursuant to Title VII, which is a federal statute. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, DNR's offices and business records are located in this District, and many of the unlawful practices described herein occurred in this District.

**CONDITIONS PRECEDENT TO SUIT UNDER TITLE VII**

3. Plaintiff has satisfied all administrative prerequisites and conditions precedent to instituting this action. In particular, Plaintiff fulfilled the prerequisites to bringing a lawsuit pursuant to Title VII by dual-filing a charge of discrimination against DNR with the Maryland Commission on Civil Rights (the "MCCR") and the U.S. Equal Employment Opportunity Commission (the "EEOC") on or about June 3, 2014 and obtaining a Notice of Right-to-Sue from EEOC on or about January 12, 2015.

**PARTIES**

4. Plaintiff Beth Mauk is an individual who resides in Anne Arundel County, Maryland. Plaintiff has been employed by DNR as an Officer with the Maryland Natural Resources Police (the "NRP") since on or about October 7, 1998. Throughout Plaintiff's employment, she has consistently performed her duties in a satisfactory manner.

5. Defendant Maryland Department of Natural Resources is the department of state government for the State of Maryland charged with preserving, protecting, restoring, and enhancing the State's natural resources. DNR's enforcement arm, the Maryland Natural Resources Police, is the only other police force besides the (the "MSP") Police that has statewide jurisdiction. NRP provides a variety of services throughout the State of Maryland, including conservation and boating law enforcement, homeland security, search and rescue, emergency medical services, education, information and communications services on a round the clock basis.

6. Defendant Mark J. Belton ("Secretary Belton") is the Secretary of the Maryland Department of Natural Resources. Secretary Belton is sued in his official capacity.

**STATEMENT OF FACTS**

7. Plaintiff began her employment with DNR on or about October 7, 1998 as an Officer at DNR's Stevensville location. Plaintiff presently holds the rank of Lieutenant.

8. For more than a decade, Plaintiff's performance record at NRP was exemplary. Plaintiff consistently received positive performance appraisals and numerous awards recognizing her as an outstanding officer and boat safety professional.

9. For example, in 2001, Plaintiff was selected as NRP's Boating Safety Officer of the Year for the year before and nominated for the National Association of State Boating Law Administrator's Boating Safety Award.

10. In 2002, Plaintiff received a commendation from the Maryland Highway Safety Office and Mothers Against Drunk Driving for making the most DUI/DWI arrests that year.

11. In 2003, Plaintiff was nominated for NRP's awards for Boating Safety Officer of the Year, Conservation Officer of the Year and Officer of the Year.

12. In 2005, Plaintiff was recognized by both the Northeast Conservation Law Enforcement Chief's Association and the Anne Arundel County Optimist Club as NRP's Police Law Enforcement Officer of the Year.

13. On or about December 2, 2010, Plaintiff filed an internal grievance formally accusing Major Mike Sewell ("Major Sewell"), who is the head of field operations for NRP's Eastern and Southern Regions, of violating NRP policies and procedures by failing to consider her for the position of Acting Captain of NRP's Communications Center. After NRP Superintendent Colonel George Johnson, IV ("Colonel Johnson") and DNR former Deputy Secretary Joseph Gill denied the grievance, Plaintiff lodged an appeal with the Maryland

Department of Budget and Management on December 31, 2010, which subsequently forwarded the matter to the Maryland Office of Administrative Hearings on or about February 10, 2011.

14. On or about February 4, 2011, Plaintiff filed a charge of discrimination with the EEOC specifically alleging that Major Sewell and Colonel Alphonso Hawkins ("Colonel Hawkins") denied her the opportunity to serve as Acting Captain based on her sex. Plaintiff also alleged that Colonel Johnson, Lieutenant Hawkins and Major Sewell had a practice of disproportionately placing female officers in positions within NRP's Support Services Division and that another female officer had been passed over for promotion in favor of a less qualified male officer with fewer years of seniority. Plaintiff further alleged that NRP's command staff had a practice of discriminating and/or retaliating against personnel by transferring them to NRP's Support and/or Technical Services Division.

15. Since Plaintiff accused Major Sewell and other superior officers of sex discrimination and/or retaliation, Defendants have subjected Plaintiff to an ongoing campaign of retaliatory harassment including, but not limited to, encouraging Plaintiff's peers and/or subordinates to make frivolous and/or baseless allegations against her in order to damage her reputation and "push her out" of NRP.

16. In addition, Plaintiff was placed under investigation by NRP's Internal Affairs Unit ("IAU") at least five (5) times for engaging in conduct that would not and has not resulted in any disciplinary action being taken against other officers.

17. For example, on or about October 9, 2012, IAU notified Plaintiff that she was being investigated as a result of a complaint by Lieutenant Joe Offer alleging that Plaintiff improperly disclosed his confidential information and/or provided slanderous and untrue information about him to a subordinate officer. On or about December 14, 2012, IAU notified

Plaintiff that she was under investigation for allegedly harassing, intimidating and threatening the subordinate officer who supposedly witnessed her alleged statements about Lieutenant Offer to retaliate against him for providing information in support of Lieutenant Offer's complaint. On or about February 12, 2013 and June 13, 2013, IAU notified Plaintiff that it was closing these investigations based on a finding that the complaints were non-stained.

18.  On or about November 15, 2013, Captain Charles Vernon ("Captain Vernon"), who was then Plaintiff's immediate supervisor, warned Plaintiff that he had heard Major Sewell was being transferred to her location and planning to "push her out" of NRP.

19.  On or about February 25, 2014, IAU notified Plaintiff that she was being investigated for directing a subordinate probation officer to lie during the course of an ongoing criminal investigation.  IAU initiated this investigation based on a complaint by Major Sewell alleging that Plaintiff improperly instructed the probation officer to misrepresent her identity during a criminal investigation involving a family that was living aboard a vessel anchored just off Magothy Marina.  Although NRP officers are clearly bound by legal precedents prohibiting law enforcement officers from engaging in conduct that would "shock the conscience," they can and often do rely on duplicity and pretense in the course of a criminal investigation.

20.  In the first week of March 2014, Plaintiff informed Paul Peditto ("Mr. Peditto"), who was then serving as DNR's head of Human Resources, that she believed she had repeatedly been placed under investigation by IAU in retaliation for her prior complaints of sex discrimination and/or retaliation.  Mr. Peditto suggested that Plaintiff report her concerns to Secretary Gill and/or Deputy Secretary Frank W. Dawson, III ("Deputy Secretary Dawson") and also file a charge of discrimination with the MCCR.

21.     On or about March 7, 2014, Plaintiff went to see Secretary Gill and/or Deputy Secretary Dawson. Because Secretary Gill was unavailable, Plaintiff reported her suspicions that Major Sewell and other members of the command staff were retaliating against her to Deputy Secretary Dawson.

22.     On March 19, 2014, IAU notified Plaintiff that she was being investigated for purportedly interfering with IAU's investigation of her conduct relating to the Magothy Marina situation by directing other subordinate officers to alter their reports and providing false information in a debriefing with her superiors. IAU also notified Plaintiff that she was under investigation for failing to properly follow the official chain of command by reporting her concerns about possible retaliation directly to Deputy Secretary Dawson without notifying or obtaining permission from her superiors. IAU initiated these investigations based on complaints made by Major Sewell and Colonel Hawkins.

23.     On March 20, 2014, Plaintiff filed an internal grievance formally accusing Colonel Johnson, Major Sewell, Lieutenant Hawkins and Lieutenant Offer of discriminating against her based on sex and retaliating against her for making her prior sex discrimination and/or retaliation complaints by conspiring amongst themselves and/or condoning the initiation of repeated internal investigations based on frivolous and/or baseless allegations.

24.     Shortly thereafter, Plaintiff's attorney in connection with the IAU investigations, Michael E. Davey ("Mr. Davey"), sent Deputy Secretary Dawson a letter requesting for the investigation of Plaintiff's alleged misconduct during the Magothy Marina situation to be handled by an outside agency. On or about April 23, 2014, Deputy Secretary Dawson sent Mr. Davey a letter affirming that IAU would complete the investigation, but promising Major Wayne S. Jones ("Major Jones"), who is the head of IAU, would "be directed to send the completed

investigation to another police agency for review and any necessary follow-up on the investigation as well as any necessary and/or appropriate actions resulting from its review and the findings of the investigation."

25.     On or about June 3, 2014, Plaintiff dual-filed the charge of discrimination this action arose from with the MCCR and the EEOC. On or about October 2, 2014, the MCCR issued its determination that there was no probable cause to believe Defendants retaliated against Plaintiff for opposing unlawful discrimination. In making that determination, the MCCR relied, in part, on the fact that no material adverse actions were taken against Plaintiff while the complaints were pending and the IAU investigations were completed.

26.     On or about October 23, 2014, or within a matter of weeks, IAU Investigator Lieutenant Brian Rathgeb ("Lieutenant Rathgeb") notified Plaintiff that the allegations against her relating to the Magothy Marina situation were found to be sustained and NRP was administratively charging her with thirty-six (36) separate violations of NRP policies, procedures and/or regulations based on her alleged misconduct in connection with the Magothy Marina situation. At that time, Plaintiff asked Lieutenant Rathgeb about the status of the external review, but he seemed to know nothing about it. Plaintiff was also suspended and placed on restricted duty pending the results of a trial board, which is presently scheduled to begin on May 19, 2015.

27.     In preparation for the trial board, on or about March 19, 2015, Mr. Davey sent Major Jones a letter requesting the name of the law enforcement agency that Major Jones forwarded IAU's completed investigation of the Magothy Marina situation to for review, the date the investigation file was forwarded to that agency, the name of the law enforcement officer who reviewed the file, and a copy of any and all reports generated by the reviewing law enforcement

agency. In response, Major Jones sent Mr. Davey a copy of a letter the Maryland Transportation Authority Police ("MdTA") supposedly issued on October 24, 2014 (or *the day after* IAU notified Plaintiff that she was being administratively charged and Plaintiff inquired about the status of the external review and observed that Lieutenant Rathgeb seemingly knew nothing about it) stating that the outside agency had reviewed IAU's investigation and determined it was sufficient. Notably, during the MCCR's investigation Defendants produced a copy of a letter they claimed they sent to the *MSP* requesting an external review of IAU's internal investigation of the Magothy Marina situation. In fact, in reaching its no probable cause determination, the MCCR specifically noted that Defendants had taken "the extraordinary step of requesting an outside police agency to review their investigation against" Plaintiff and produced a copy of the request that was sent to *MSP*.

## COUNT I

**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*, AS AMENDED AGAINST DEFENDANT DNR AND DEFENDANT BELTON IN HIS OFFICIAL CAPACITY WITH RESPECT TO PROSPECTIVE DECLARATORY AND/OR INJUNCTIVE RELIEF ONLY**

28. Plaintiff re-alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though fully set forth herein.

29. Defendants intentionally discriminated against Plaintiff in violation of Title VII by retaliating against her for opposing unlawful sex discrimination.

30. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has incurred pecuniary losses as a result of having to defend herself in a trial board, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, nominal damages, and punitive damages, pre-judgment and post-judgment interest, attorney's fees, and the costs and expenses relating to this suit.

31. Because of the discrimination and/or retaliation Plaintiff has suffered as a result of her employment with Defendants, Plaintiff is entitled to all legal and equitable remedies available under Title VII.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A declaratory judgment that Defendants' conduct challenged herein is illegal and in violation of Title VII;

B. A permanent injunction against Defendants, their agents, employees and/or representatives, and any and all persons acting in concert with them, prohibiting them from engaging in any further unlawful and retaliatory practices as set forth herein;

C. An Order requiring Defendants to expunge any negative or adverse material from Plaintiff's personnel file;

D. An award of compensatory and punitive damages to Plaintiff in an amount not less than $300,000.00;

E. An award of litigation costs and expenses, including reasonable attorneys' fees, to Plaintiff;

F. Pre-judgment and post-judgment interest;

G. Any other equitable relief to which Plaintiff is entitled; and

H. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

                                             Respectfully submitted,

                                             /s/
_____
Tonya Baña  (Bar No. 27326)
111 S. Calvert Street, Suite 1950
Baltimore, MD 21202
Telephone: (410) 296-0780
Telefax: (410) 296-2263
*Attorney for Plaintiff*